NO. 07-99-0271-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 20, 2001

______________________________

JOE M. STEVENS, JR., as  Administrator of 

the Brown & Root Group Medical Plan,

Appellant

v.

SPALDING & EVENFLO COMPANIES, INC., the 

ESTATE OF GERTRUDE LOWE, and HOGGIE COSSEY, individually

and as next friend of SAMANTHA COSSEY, a minor
 

Appellee

FROM THE 58th JUDICIAL DISTRICT, JEFFERSON COUNTY;

NO. A-150,776-A; HON. JAMES MEHAFFY, PRESIDING

_______________________________

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

Joe M. Stevens, administrator of the Brown & Root Group Medical Plan (Stevens) appeals from a final judgment denying him recovery against Spalding & Evenflo Companies, Inc., (Evenflo), the estate of Gertrude Lowe (Lowe), and Hoggie Cossey, individually and as the next friend of Samantha Cossey, a minor (Cossey).  Nine issues are raised by Stevens which purportedly illustrate that the court erred in rendering the decision it did.  For reasons to be explained, we reverse and render the judgment.

Background

 Cossey sued Evenflo and Lowe for personal injuries they allegedly caused her as a result of an automobile accident.  Stevens intervened in the suit, contending that the group medical plan it represented was subrogated to a portion of the claim of Cossey.  This right to subrogation arose when Stevens paid for various medical bills incurred by Cossey while ameliorating the injury caused by Evenflo and Lowe.  Furthermore, Cossey and Stevens executed an agreement pursuant to Texas Rule of Civil Procedure 11 wherein Cossey admitted that the Brown & Root Group Medical Plan had a contractual right of subrogation and reimbursement “under the terms of the Plan” for all medical and health care expenses paid for by the Plan and involving the automobile accident.  

Eventually, Cossey, Evenflo, and Lowe entered into a settlement agreement under which Cossey was to receive $220,000.  Thereafter, a document entitled “Motion for Reduction of Contractual Lien” (motion to reduce) was filed with the trial court by Cossey.  The latter stated therein that Stevens “has asserted a lien of $41,604.45" and that it “did nothing by way of preparation of the above-referenced.”  Then, Cossey requested that the aforementioned lien be “reduced by one-third for attorney’s fees” and that “the expenses be reduced by a pro-rata amount.”  The trial court convened a hearing on the motion but did not resolve it at that time.  Rather, the court and parties discussed the motion, Stevens’ intent to move for arbitration (though a motion requesting that the matter be sent for 

arbitration had yet to be filed), and the potential effectiveness of mediation.
(footnote: 1)  Once those matters were broached, the trial court decided to adjourn the hearing until March 12th and refer the cause to mediation.  So too did it tell the litigants that the “only question remaining [was] what kind of proof will be presented to the Court on March the 12th” and proposed that “you-all agree that the Court may consider affidavits as far as the circumstances of the prosecution of the lien are concerned.”  Otherwise, it would hold an “evidentiary hearing.”  The litigants agreed to submit, at the March 12th hearing, the evidence they believed they needed via affidavits.

When March 12th arrived, Stevens and Cossey had yet to resolve their dispute.  So, the court reconvened the hearing.  At that time, Cossey moved to realign the parties and to sever the intervention from the suit between Cossey, Evenflo and Lowe.  That motion was granted, and the court asked Stevens if it was “ready to go forward on the trial itself today.”  Stevens answered “[y]es, your honor.”  After a brief recess for lunch, the court uttered 1) “[w]e will proceed to hear the matter” and 2) “[c]all your first witness.”  At that point, Cossey stated that it was Steven’s burden to “prove up their [sic] lien.”  The trial court responded by stating “[t]hat’s fine” and “[c]ounsel, call your first witness.”  

Stevens reminded the court that the parties had agreed to present their witnesses through affidavit and moved for the admission of the affidavits of August T. White and Deborah Crawford “and the attachments thereto which have been filed with the Court.”   Cossey objected because neither individual was “listed in the interrogatories.”   The court sustained the objections and refused to admit the affidavits and attachments into evidence.  With this said and done, Stevens informed the court that it had no other witnesses.  In turn, Cossey tendered several documents into evidence.  Thereafter, the court entertained argument for counsel and rejected Stevens request for arbitration.  It also stated that 1) it “fail[ed] to find that there is a lien or that any payment [was] made by . . . Stevens” on behalf of Cossey, 2) it “fail[ed] to find that there [was] any right of subrogation,” and 3) “the intervention . . . is denied.”  Thereafter, judgment was entered denying Stevens any recovery, even though the only relief sought by Cossey through the motion to reduce was a one-third reduction of the lien.

Issue One

As illustrated by its pronouncements at the end of the hearing, the trial court denied Stevens recovery because Stevens allegedly 1) had no lien or right to subrogation and 2) made no payments to Cossey.  In response to those conclusions, Stevens effectively argues, via a rather rambling first point, that through the Rule 11 agreement executed with Cossey and various admissions of fact it was entitled to recovery as a matter of law.  We agree.

The record discloses that long before Cossey moved to reduce the lien of Stevens, the two litigants executed a Rule 11 agreement.  Through the document, they agreed that:

. . . Brown & Root Group Medical Plan has a contractual right of subrogation and reimbursement, under the terms of the Plan, for all medical and health care expenses paid for by the Plan on behalf of the members of the Cossey family, including Samantha Cossey, who were involved in an automobile accident which occurred on or about November 23, 1994.
(footnote: 2)

Next, via the motion to reduce, Cossey acknowledged that Stevens asserted a lien of $41,604.45 on the proceeds of the settlement.  So too did Cossey attach to the motion an itemization or accounting of the medical and health expenses allegedly paid by the Plan on behalf of Samantha and relating to the accident.  

More importantly, at the initial hearing on the motion and in response to the court’s query about whether the litigants were ready to proceed, Cossey told the court that “we have been able to agree on some facts.”  The first fact agreed upon was that Stevens had actually intervened in the cause.
(footnote: 3)  The second fact agreed upon concerned the amount of medical expenses paid by Stevens.  This stipulation or factual agreement was made manifest through the following utterance of Cossey to the trial court: 

No. 2, the amount of the medical that was proven up by 
me
 was somewhere in the thirty-six to 38,000-dollar range.  That was going to be prepared for trial.  They say they [
i.e.
 Stevens] paid 41, and they’ve 
proven to me that.
  And, that’s what happened with regard to the medical expenses.  (Emphasis added).

In other words, Cossey first thought that the medical expenses involved approximated 
$36,000 to $38,000 but then acknowledged in open court, prior to trial, that Stevens proved to his satisfaction that $41,000 in expenses were actually paid.

So, what we have before us are 1) a Rule 11 agreement wherein Cossey expressly recognized Stevens’ right to subrogation and reimbursement for “all medical and health care expenses paid for by the Plan” and 2) Cossey’s acknowledgment that Stevens actually paid at least $41,000 in medical expenses.  These two acts are nothing short of concessions on the part of Cossey.  As such, they also constituted stipulations.  
Rosenboom Mach.& Tool., Inc.
 
v. Machala
, 995 S.W.2d 817, 821 (Tex. App.--Houston [1st Dist.] 1999, pet. denied); 
National Union Fire Ins. Co. v. Martinez
, 800 S.W.2d 331, 334 (Tex. App.--El Paso 1990, no writ).  And, being stipulations, they bound not only the litigants 
but also the trial court
.  
Federal Lanes, Inc. v. City of Houston
, 905 S.W.2d 686, 689 (Tex. App.--Houston [1st dist.] 1995, writ denied).   So too did they relieve Stevens from having to present any evidence on the matters encompassed by them.  
See McLendon v. Texas Dep’t Pub. Safety
, 985 S.W.2d 571, 574-75 (Tex. App.--Waco 1998, no pet.).  

Consequently, no one, not even the trial court, could dispute that Stevens had a right to subrogation and a valid claim for $41,000.  In holding otherwise, the trial court erred.  And, to the extent that the error denied Stevens recovery, we hold that the error was harmful and sustain the first point.

Issue Two

In its second issue, Stevens argues that Cossey was estopped from disputing the validity of its claim.  We disagree and overrule the point.  Estoppel being an affirmative defense, 
Tex. R. Civ. P
.
 94, Stevens was obligated to assert it in its pleadings below.  Because it did not, the defense was waived.  
In re Estate of Davis
, 870 S.W.2d 320, 322 (Tex.App.–Eastland 1994, no writ) (holding that failure to specifically plead estoppel resulted in its waiver as an affirmative defense).

Issue Three

In its third issue, Stevens argues that the trial court erred in excluding its evidence at the March 12th trial.  We disagree and overrule the point.  The evidence in question was not included in a bill of exceptions or like offer of proof.  Such was necessary to preserve complaint regarding the trial court’s decision.  
Tex. R. Evid.
 103(a)(2).
(footnote: 4)
Issue Four

In its fourth issue, Stevens argues that the trial court erred in severing its intervention from the original proceeding between Cossey, Evenflo and Lowe.  We agree and sustain the point.  Having determined above that Stevens had a right of subrogation to any claim of Cossey against Evenflo and Lowe and to reimbursement from Cossey, severing Stevens from the suit was an abuse of discretion.  
See Lasater v. Franklin Life Ins. Co.
, 471 S.W.2d 95, 98 (Tex. Civ. App.--El Paso 1971, no writ) (holding that it was inappropriate to sever the intervenor’s claim when the intervenor had an interest in the property at issue).   

Issue Five

In its fifth issue, Stevens contends that the trial court erred in entering a take nothing judgment because Cossey did not join issue by filing a pleading that disputed its claim.  Having concluded through point one that the trial court erred in denying Stevens recovery, we need not address this point for it is moot.

Issue Six

In its sixth issue, Stevens contends that the trial court erred in denying its motion to compel arbitration.  We disagree and overrule the point.  The motion was not filed before the initial hearing on the motion to reduce lien.  Furthermore, when asked at the March 12th hearing whether it was ready to try its claim, Stevens answered in the affirmative and proceeded to tender evidence (as did Cossey) without objecting to the forum.  Under these circumstances, we conclude that Stevens substantially invoked the judicial process to the detriment of Cossey and waived any right to arbitration.  
In re Bruce Terminix Co.
, 988 S.W.2d 702, 704 (Tex.1998).

Issue Seven

In issue seven, Stevens again complains that the trial court’s decision was both legally and factually insufficient.  Having concluded through point one that the trial court erred in denying Stevens recovery, we need not address this point for it is moot.

 
Issue Eight

In issue eight, Stevens contends that the trial court’s take nothing judgment deprived it of constitutional rights.  Having concluded through point one that the trial court erred in denying Stevens recovery, we need not address this point for it is moot.

Issue Nine

Through its ninth and final issue, Stevens simply attempts to tell us “what really happened in this case” and how courts in the “Golden Triangle . . . have policed an unofficial policy of forcing subrogating benefit plans to pay plaintiff lawyer’s fees to support obtaining a settlement.”  Having concluded through point one that the trial court erred in denying Stevens recovery, we need not address this point for it is moot.
(footnote: 5)  

In sum, we sustain issues one and three.  Next, pursuant to Texas Rule of Appellate Procedure 43.3 and our duty to render the judgment which the trial court should have rendered, we 1) reverse the judgment entered in trial cause number A-150,776-A, styled 
Joe M. Stevens, Jr., administrator of the Brown Root Group Medical Plan v. Hoggie Cossey, individually and as next friend of Samantha Cossey, a minor and Spalding & Evenflo Companies, Inc. and the estate of Gertrude Lowe
, 2) reverse the order severing trial cause number A-150,776-A from trial cause number A-150,776, 3) order that trial cause number A-150,776-A be consolidated with trial cause number A-150,776, and 4) order that our appellate cause number 07-99-0271-CV be consolidated with our appellate cause number 07-99-0270-CV for purposes of the rendition of a final judgment.  

Brian Quinn

   Justice

Do not publish.

FOOTNOTES
1:
While addressing the mentioned issues, the trial court also informed the litigants of the “policy considerations which [it believed] underlie this matter.”  The policy considerations, which purportedly involved a “serious, ongoing problem for us in the administration of justice,” were described by the court as follows: 

. . . let me refine or frame this debate somewhat by saying that one of the persistent problems we have here in this court . . . is lienors, whether they be worker’s compensation or other such lienors, whether they be statutory or contractual lienors, who don’t participate in the litigation, who don’t contribute anything to the outcome, but who come in at the last moment and blow a settlement wide open because they don’t even provide the information; and they just say “Well you have to pay us and maybe we’ll tell you how much it is and maybe we won’t and maybe we’ll tell you when we feel like it and maybe you’ll have to drag it out of us. I’m not suggesting that that’s the conduct of the lienor here . . . .

So too did the trial court “suggest that [Cossey] be prepared to explain why [it] should not, at least on a quantum meruit basis . . . award up to a third of the amount of the lien as an attorney’s fee, together with the pro rata share of the expense.”   

2:
Stevens attached the written agreement, signed by legal counsel for Stevens and Cossey on or about May 23, 1995, to its response to the Motion to Reduce Lien.  Furthermore, the response was filed of record by March 12, 1999.  Thus, the circumstances surrounding the execution of the agreement satisfy the elements of Rule 11, and, therefore, the contract is enforceable.  
Tex. R. Civ. P
.
 11 (requiring the agreement to be in writing, signed and filed with the papers as part of the record or made in open court and entered of record).

3:
Cossey initially represented to the court that no intervention had occurred, despite the fact that one containing a file-mark of February 21, 1995, appeared of record.  Furthermore, the document contains a certificate of service indicating that the instrument was served on counsel for Cossey on February 20, 1995.  Thus, it is clear that Stevens perfected its intervention approximately four years before Cossey represented to the court that no intervention had occurred.

4:
Because this issue was not preserved, no evidence appears of record establishing that Stevens paid $41.604.45 in medical expenses, as opposed to the $41,000 admitted to by Cossey. 

5:
Though we do not address the point, we nevertheless note several things of import.  First, in its motion to reduce, Cossey “pray[ed] that the $41,604.45 be reduced by one-third 
for attorney’s fees
.”  (Emphasis added).  Thus, his suggestion that the reduction was not for the purpose of securing attorney’s fees rings hollow.  Second, upon combining the foregoing prayer with the trial court’s comments described in the first footnote, one could suspect that Stevens’ contention was not without some factual basis.  But, again, we do not address it.